**In re Thomas Welburn McLEAN, Jr., Debtor.**

**Thomas Welburn McLEAN, Jr., Plaintiff,**

v.

**VIRGINIA DEPARTMENT OF SOCIAL SERVICES, Defendant.**

Bankruptcy No. 85–01067–R.

Adv. No. 85–0391–R.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

April 3, 1986.

Andrew W. Wood, Richmond, Va., for plaintiff/debtor.

Kimberly S. Ritchie, Asst. Atty. Gen., Richmond, Va., for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court on the complaint of Thomas Welburn McLean, Jr. ("debtor") for a determination that a debt owing to the Virginia Department of Social Services is dischargeable in bankruptcy. A pretrial conference was convened in this proceeding on December 4, 1985, and upon the representation of the parties that the facts are substantially uncontroverted, and upon ordering the submission of briefs, this matter was taken under advisement.

By order of this Court entered December 5, 1985, the parties were directed to file a stipulation of facts. Although the debtor has represented that the facts as stated in his brief have been agreed to by the Department of Social Services, there has been no acknowledgement of that representation. The Department of Social Services has alleged additional facts in its brief; however, as none of the alleged facts have been contested by the parties, the Court will take the facts presented as accurate.

## STATEMENT OF THE CASE

Dorothy McLean, now Dorothy Inman, and the debtor were divorced from bed and board by a decree of the Circuit Court of the City of Richmond, Virginia on March 21, 1967. One child was born as a result of this marriage, a daughter, Dorothy Lynne McLean, on October 29, 1965. The bed and board decree made the following provision regarding the support of the couple's daughter:

> It appearing that there was one child born as a result of this marriage ... who is now in the care, custody and control of [Mrs. McLean], and it further appearing there is a duty on [the debtor] to support the said child, but at the present time he is involuntarily paying the sum of $15.00 per week for [the child's] care and maintenance, therefore, no order is entered at this time as to the amount of support, and the Court doth divest itself of any future jurisdiction as to custody and support of the said child and all future questions pertaining to the support and custody are hereby referred to the proper Juvenile and Domestic Relations Court.

The debtor asserts that the term "involuntarily" was a clerical error, and that he was paying the sum referred to voluntarily on his own accord. On February 1, 1968, the Circuit Court entered a Final Decree of Divorce from the bonds of matrimony, and the terms of the bed and board decree were merged into the Final Decree. Specifically, the Final Decree held that "the same provisions regarding the care and custody of Dorothy Lynne McLean, infant child of the

parties hereto, as contained in the decree heretofore entered in this cause on March 21, 1967 be continued in full force and effect."

On January 11, 1980, Dorothy Inman applied for Aid for Dependent Children (AFDC) through the Richmond Department of Public Welfare. The debtor was advised by a representative of the Child Support Enforcement Programs by letter dated April 14, 1980 that his former wife was receiving AFDC benefits for Dorothy Lynne McLean. Under *Va.Code Ann.* § 63.1–251 (1980 Repl.Vol.)[1] as required by § 402(a)(26) of the Social Security Act,[2] Dorothy Inman assigned to the Commonwealth of Virginia any rights to support, including arrearages, owed to her by the debtor. Section 63.1–251 of the Virginia Code provides that any payment of public assistance money made to or for the benefit of a dependent child creates a debt owing to the Virginia Department of Social Services by the person responsible for the support of that child in an amount equal to the amount of assistance furnished.

The debtor was interviewed by an investigator from the support division of Social Services on April 16, 1980, and the investigator advised the debtor of the debt created by § 63.1–251; however, the debtor refused to sign a financial statement or agreement to support Dorothy Lynne McLean. Dorothy Inman received AFDC benefits for the couple's daughter from January 1, 1980 through October 31, 1983 in the total amount of $9,268.00

1. *Va.Code Ann.* § 63.1–251 (1980 Repl.Vol.). Payment of public assistance for child or caretaker constitutes debt to Department by responsible persons; limitation; Department subrogated to rights.—Any payment of public assistance money made to or for the benefit of any dependent child or children or their caretaker creates a debt due and owing to the Department by the person or persons who are responsible for support of such children or caretaker in an amount equal to the amount of public assistance money so paid; provided, however, that where there has been a court order or final decree of divorce, the debt shall be limited to the amount of such court order or decree; provided, further, that the Director may, pursuant to § 63.1–264, limit the debt to an amount determined to be consistent with the debtor's ability to pay, both as to amounts accruing and accrued during any period in which public assistance payments are made. The Department shall have the right to petition the appropriate court for modification of a court order on the same grounds as either party to such cause.

The Department shall be subrogated to the right of such child or children or caretaker to prosecute or maintain any support action or execute any administrative remedy existing under the laws of the Commonwealth of Virginia to obtain reimbursement of moneys thus expended. If a court order or final decree of divorce enters judgment for an amount of support to be paid by such responsible person, the Department shall be subrogated to the debt created by such order, and said money judgment shall be deemed to be in favor of the Department.

Debt under this section shall not be incurred by nor at any time be collected from a responsible person who is the recipient of public assistance moneys for the benefit of minor dependent children for the period such person or persons are in such status.

2. 42 U.S.C.A. § 602(a)(26).

(a) A state plan for aid and services to needy families with children must—

(26) provide that, as a condition of eligibility for aid, each applicant or recipient will be required—

(A) to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed,

(B) to cooperate with the State (i) in establishing the paternity of a child born out of wedlock with respect to whom aid is claimed, and (ii) in obtaining support payments for such applicant and for a child with respect to whom such aid is claimed, or in obtaining any other payments or property due such applicant or such child, unless (in either case) such applicant or recipient is found to have good cause for refusing to cooperate as determined by the State agency in accordance with standards prescribed by the Secretary, which standards shall take into consideration the best interests of the child on whose behalf aid is claimed; and that, if the relative with whom a child is living is found to be ineligible because of failure to comply with the requirements of subparagraphs (A) and (B) of this paragraph, any aid for which such child is eligible will be provided in the form of protective payments as described in section 606(b)(2) of this title (without regard to clauses (A) through (D) of such section); unless the State agency, after making reasonable efforts, is unable to locate an appropriate individual to whom such payments can be made.

On the petition of the Division of Child Support Enforcement Programs, the Juvenile and Domestic Relations Court of the City of Richmond, on June 24, 1985, ordered the debtor to pay $40.00 per week on an arrearage of $8,428.00 arising from the debt created by § 63.1–251. However, on July 9, 1985, the debtor filed a petition for relief under Chapter 7 of Title 11 of the United States Code, and among the debts listed in his petition is the debt owing to the Department of Social Services. The debtor asserts in his complaint that the debt is dischargeable in bankruptcy, because 11 U.S.C. § 523(a)(5) only makes nondischargeable child support obligations arising "in connection with a separation agreement, divorce decree, or other order of a court of record, or a property settlement agreement...." The debtor asserts that the debt falls outside that classification, given that he was never under a court order to pay child support.

On the other hand, the Department of Social Services asserts that the debt arising under *Va.Code Ann.* § 63.1–251 is properly excepted from discharge under § 523(a)(5)(A), which provides that child support obligations assigned to a state under 42 U.S.C.A. § 602(a)(26), hereinafter referred to as § 402(a)(26) of the Social Security Act, are nondischargeable. Furthermore, it is asserted that notwithstanding the "in connection with" restriction of § 523(a)(5), the debtor's arrearage is nondischargeable under 42 U.S.C.A. § 656(b), hereinafter referred to as § 456(b) of the Social Security Act. Section 456(b) provides that "a debt which is a child support obligation assigned to a State under section 602(a)(26) [§ 402(a)(26) of the Act] is not released by a discharge in bankruptcy under Title 11." 42 U.S.C.A. § 656(b).

## CONCLUSIONS OF LAW

In *State of Oregon v. Richards*, 45 B.R. 811 (D.C.D.Ore.1984) the district court, in an opinion reversing an order of the bankruptcy court, examined the apparent conflict between § 523(a)(5)(A) of the Bankruptcy Code and § 456(b) of the Social Security Act. Concluding that Congress did not mandate that every provision affecting discharges in bankruptcy be found under Title 11 of the United States Code, *Richards* held that § 456(b) does have a substantial impact on the discharge of a child support obligation assigned to a state as a condition of receiving AFDC benefits. *See In re Leach*, 15 B.R. 1005 (Bankr.D.Conn. 1981).[3] However, prior to applying the law to the facts in this case, some history of the evolution of the law regarding dischargeability and the assignment of rights to receive AFDC benefits is necessary.

Section 523(a)(5)(A) of the Bankruptcy Code, as amended by the Bankruptcy Amendments and Judicial Reform Act of 1984, Pub.L. No. 98–353, currently provides as follows:

(a) a discharge under § 727 ... of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State).

Congress enacted § 523(a)(5) to ensure that child support payments will continue to a custodial parent even though the noncustodial parent has filed for bankruptcy. *State of Oregon v. Richards*, 45 B.R. 811, 812

---

**3.** The Court in *Leach* provided that "Congress need not write every law affecting discharge into title 11 of the United States Code. For an earlier example, the prior law making certain educational loans nondischargeable was contained in section 439A of Part B of title IV of the Higher Education Act of 1965, not in the Bankruptcy Act." *Leach,* 15 B.R. at 1008, n. 8.

(D.C.D.Ore.1984). The nondischargeability provision of § 523(a)(5)(A) is subject to two limitations. First, the debt at issue is nondischargeable if it arises "in connection with a separation agreement, divorce decree, or other order of a court of record, or property settlement agreement ..." Second, if the debt has been assigned by the custodial parent, then the debt becomes dischargeable unless an assignment is made pursuant to § 402(a)(26) of the Social Security Act in order to enable the custodial parent to receive AFDC benefits. *Richards*, 45 B.R. at 812–13. Since the 1984 amendment of § 523(a)(5)(A) any assignment to the Federal Government, a State, or a political subdivision of a State is also nondischargeable.

By the same token, the debtor has asserted that the arrearage established by the Juvenile and Domestic Relations Court does not fall within the purview of § 523(a)(5)(A). It could be argued that the facts in this case reflect no court order existed at the time of assignment which would fall within the "in connection with" restriction of § 523(a)(5), and the absence of a specific court ordered child support decree in both the bed and board decree and the final decree indicates that the debtor had no obligation of record that would require him to pay a fixed amount to his wife. However, the fact that McLean was making voluntary payments may well lead the Court to conclude that there was some type of tacit separation agreement or property settlement. What constitutes a separation agreement or property settlement for the purposes of dischargeability under bankruptcy law is not the basis on which this Court makes its determination.

Even though the debt established as owing to the Department of Social Services may not squarely fit within § 523(a)(5), the debt is nondischargeable under § 456(b) of the Social Security Act, because with regard to child support obligations arising out of the receipt of AFDC benefits,

§ 523(a)(5)(A) is not the controlling statutory provision. The basis for this conclusion is that after the enactment of the Bankruptcy Reform Act of 1978 and prior to October 1, 1981, an assignment of child support obligations to a state as a condition of receiving AFDC benefits rendered the debt dischargeable. However, the result was altered by the addition of the parenthetical clause in § 523(a)(5)(A) by the Omnibus Budget and Reconciliation Act of 1981.[4] The same provision that added the above clause to § 523(a)(5)(A) added § 456(b) to the Social Security Act.

The rather scant legislative history behind the 1981 Amendment provides:

*Child support obligations not discharged in bankruptcy*—When the Congress enacted the child support legislation in 1974 it included a provision which prohibited the discharge in bankruptcy of a child support obligation which had been assigned to a state as a condition of AFDC· eligibility. This Social Security Act provision was subsequently repealed by section 328 (sic) of Public Law 95–598 (the 1978 revision of the Bankruptcy Act).

The committee amendment would reinstate the provision previously in effect declaring that a child support obligation assigned to a state as a condition of AFDC eligibility is not discharged in bankruptcy, effective October 1, 1981.

S.Rep. No. 139, 97th Cong., 1st Sess. at 442 (1981) *reported in* 1981 U.S.Code Cong. & Ad.News 396, at 708.

The provision of the Social Security Act in effect under the Bankruptcy Act of 1898, as amended, read as follows:

(b) a debt which is a child support obligation assigned to a state under section 602(a)(26) [§ 402(a)(26) of the Act] of this title is not released by a discharge in bankruptcy under the Bankruptcy Act.

42 U.S.C. § 656(b) (1976). Section 17(a)(7) of the Bankruptcy Act provided that debts

---

4. Pub.L. No. 97–35, § 2334, 95 Stat. 863 (1981).

"for alimony due or to become due, or for maintenance or support of wife or child ..." are nondischargeable in bankruptcy. 11 U.S.C. § 35(a)(7) (repealed 1978). Notable by its absence in § 456(b) of the Social Security Act was the "in connection with" restriction as currently appears under § 523(a)(5) of the Bankruptcy Code. *Richards*, 45 B.R. at 814.

The district court in *Richards* concluded that in order for Congress to carry out its intent to make a debt arising from an assignment of AFDC benefits nondischargeable, Congress would have to revert to the broader definition of "child support obligation" that existed under the Bankruptcy Act, and not the "in connection with" restriction of § 523(a)(5) which became effective with the 1978 Reform Act. *Id.* Therefore, as opposed to § 523(a)(5)(A), the court held that § 456(b) of the Social Security Act, controls, and it makes nondischargeable all child support obligations assigned to the states by AFDC recipients regardless of whether the obligation arose "in connection with a separation agreement, divorce decree, or other order of a court of record or property settlement agreement." *Richards*, 45 B.R. 814–15.

The debtor argues here, as did the parent against whom the debt was sought to be collected in *Richards*, that § 402(a)(26) of the Social Security Act only allows for the assignments of rights of support that have accrued at the time of assignment. The debtor has asserted that when the assignment took place, there was no obligation, but instead a direct liability to the Commonwealth was created by virtue of *Va. Code* § 63.1–251. For that reason, the debtor asserts that the debt falls outside the purview of § 523(a)(5)(A) and the nondischargeability provision of § 456(b) of the Social Security Act. This argument is specious. The overall statutory scheme of the provisions related to the receipt of AFDC benefits clearly reflects a Congressional intent that the debt for which the debtor in this proceeding is liable is precisely the type of debt that Congress intended to be held nondischargeable. *See Richards*, 45 B.R. at 816. Moreover, in *Matter of Stovall*, 721 F.2d 1133 (7th Cir.1983), the Seventh Circuit held that § 402(a)(26) provides that the AFDC recipient assigns any *rights* that have accrued, not actual support money owed at the time of assignment (emphasis in original). Thus, Congress intended to cover both arrearages due at the time of assignment and support payments which became due after the assignment. *Stovall*, 721 F.2d at 1135. *Stovall* went on to hold that there is no express Congressional intent to limit the assignment to amounts in arrears at the time of assignment. *Id.* In this proceeding the fact that an arrearage was established as due and owing demonstrates to the Court that rights to payment were in fact in existence and assigned to the Department of Social Services.

As a result, even though this Court has not made a determination that the debtor was under an obligation as contemplated under § 523(a)(5) of the Bankruptcy Code to pay child support, the fact that a debt was established from the debtor to the Commonwealth pursuant to *Va.Code* § 63.-1–251 in order for his former spouse to receive AFDC assistance is sufficient to render the debt nondischargeable under § 456(b) of the Social Security Act.

For the foregoing reasons, the Court finds the debt owing to the Virginia Department of Social Services by the debtor nondischargeable in bankruptcy.

An appropriate Order will issue.